# 25-0017

## United States Court of Appeals

*for the*

## Second Circuit

ANTHONY BOBULINSKI, STEFFAN PASSANTINO,

*Plaintiffs-Appellants,*

— v. —

JESSICA TARLOV,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

JESSE R. BINNALL
BINNALL LAW GROUP
*Attorneys for Plaintiffs-Appellants*
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................iii

PRELIMINARY STATEMENT .......................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 3

STATEMENT OF ISSUES ................................................................ 3

STATEMENT OF THE CASE ........................................................... 4

SUMMARY OF THE ARGUMENT ................................................... 6

STANDARD OF REVIEW................................................................ 10

ARGUMENT .................................................................................. 11

    I.    Appellants Stated a Claim for Defamation........................... 11

        a.    The district court erred when it found that Ms. Tarlov's statements were not defamatory ................... 12

        b.    The statements were defamatory per se...................... 22

            1.    Because the statements were defamatory per se, Appellants are not required to plead special damages ......................................... 22

            2.    Even if the statements are not defamatory per se, Appellants met the standard under the Rules for pleading special damages, and the district court erred in not granting leave to amend ...................................... 27

        c.    Ms. Tarlov acted with the requisite intent ................. 30

            1.    A negligence standard applies ........................... 30

            2.    Appellants adequately pled actual malice.......... 31

    II.    Appellants Stated a Claim for Defamation by Implication.............................................................................. 38

i

III.  Mr. Passantino Stated a Claim for Injurious
      Falsehood ................................................................ 42

IV.   The District Court Erred in Applying New York's
      Anti-SLAPP Law ................................................... 44

      a.   The Federal Rules apply in place of New York's
           anti-SLAPP law ............................................. 45

      b.   The district court's reliance on Justice Stevens's
           concurrence was misplaced ........................... 67

CONCLUSION ...................................................................... 69

## TABLE OF AUTHORITIES

Page(s)

Cases:

*Abbas v. Foreign Policy Grp.*, LLC,
  783 F.3d 1328 (D.C. Cir. 2015) .................................................... *passim*

*Adelson v. Harris*,
  774 F.3d 803 (2d Cir. 2014) ........................................................... 61, 62

*ADT LLC v. Vivant Smart Home, Inc.*,
  No. 20-cv-23391, 2021 WL 4478932 (S.D. Fla. Sept. 30, 2021) ........... 28

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001) ................................................................ 22

*Aronson v. Wiersma*,
  65 N.Y.2d 592 (N.Y. 1985) ............................................................. 17, 18

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002) ............................................................................ 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 11

*Bass v. United Development Funding, L.P.*,
  No. 05-18-00752-CV, 2019 WL 3940976
  (Tex. App. Dallas 2019) ...................................................................... 36

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................... *passim*

*Berwick v. New World Network Int'l, Ltd.*,
  06 Civ. 2641 (JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ......... 43

*Bilinski v. Keith Haring Foundation, Inc.*,
  96 F. Supp. 3d 35 (S.D.N.Y. 2015) ...................................................... 42

*Bobulinski v. Tarlov*,
  No. 1:24-cv-02349, Dkt. No. 19 at 18 (S.D.N.Y May 20, 2024) ........... 26

*Bolden v. Morgan Stanley & Co.*,
  765 F. Supp. 830 (S.D.N.Y. 1991) ....................................................... 36

iii

*Brady v. NYP Holdings, Inc.*,
  No. 21-cv-3482, 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022)...............58

*Burlington N. R.R. Co. v. Woods*,
  480 U.S. 1 (1987) ....................................................................50, 51, 59

*Carbone v. Cable News Network, Inc.*,
  910 F.3d 1345 (11th Cir. 2018) ..................................................... *passim*

*Carroll v. Trump*,
  590 F. Supp. 3d 575 (S.D.N.Y. 2022) .............................................53, 54

*Carson v. Allied News Co.*,
  529 F.2d 206 (7th Cir. 1976) ....................................................36, 37, 38

*Celle v. Filipino Reporter Enterprises Inc.*,
  209 F.3d 163 (2d Cir. 2000)......................................................24-25, 32

*Chandok v. Klessig*,
  632 F.3d 803 (2d Cir. 2011)..................................................................11

*Chaplinsky v. New Hampshire*,
  315 U.S. 568 (1942) ..............................................................................26

*Chavez v. Finney*,
  No. 19-cv-4109, 2022 WL 874716 (S.D.N.Y. Mar. 23, 2022)...........22-23

*Chinese Americans Civil Rights Coalition, Inc. v. Trump*,
  No. 21-cv-4548, 2022 WL 1443387 (S.D.N.Y. May 6, 2022) ..........56, 65

*Conley v. Gibson*,
  355 U.S. 41 (1957) ................................................................................10

*Connaughton*,
  491 U.S. ................................................................................................35

*Coritsidis v. Khal Bnei Torah of Mount Ivy*,
  No. 22-cv-10502, 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024) .................54

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ..........................................................................19, 26

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
  551 F. Supp. 3d 320 (S.D.N.Y. 2021) ...................................................65

*Curtis Pub. Co. v. Butts*,
  388 U.S. 130 (1967) ................................................................ 27

*DiFolco v. MSNBC Cable L.L.C.*,
  831 F. Supp. 2d 634 (S.D.N.Y. Nov. 9, 2011) ........................ 25

*Editor's Pick Luxury LLC v. Red Points Solutions SL*,
  No. 22-cv-7463, 2023 WL 6385993 (S.D.N.Y. Sept. 29, 2023) ............ 53

*Elias v. Rolling Stone, LLC*,
  872 F.3d 97 (2nd Cir. 2017) ................................................... 10

*Erdman v. Victor*,
  No. 20-cv-4162, 2021 WL 5359660 (S.D.N.Y. Nov. 17, 2021) ............ 23

*Foster v. Churchill*,
  87 N.Y.2d 744 (N.Y. 1996) ..................................................... 20

*Friedman v. Bloomberg, L.P.*,
  No. 3:15-cv-443, 2022 WL 1004578 (D. Conn. Apr. 4, 2022) .............. 54

*Gasperini v. Center for Humanities, Inc.*,
  518 U.S. 415 (1996) .............................................................. 45

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .............................................................. 19

*Ginx, Inc. v. Soho All.*,
  720 F. Supp. 2d 342 (S.D.N.Y. 2010) ...................................... 56

*Golodner v. Berliner*,
  770 F.3d 196 (2d Cir. 2014) ................................................... 30

*Gottwald v. Sebert*,
  148 N.Y.S.3d 37 (1st Dep't 2021) .......................................... 30-31

*Grayson v. Ressler & Ressler*,
  271 F. Supp. 3d 501 (S.D.N.Y. 2017) ................................. 42, 43

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ......................................................... 50, 66

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) .............................................................. 34

*Herbert v. Lando,*
  441 U.S. 153 ................................................................32

*In re King's Place, Inc.,*
  6 B.R. 305 (E.D. Pa. 1980)........................................28

*Jewell v. NYP Holdings, Inc.,*
  23 F. Supp. 2d 348 (S.D.N.Y. 1998) .................13, 15, 41

*Kesner v. Buhl,*
  590 F. Supp. 3d 680 (S.D.N.Y. 2022) ...............53, 55, 56

*Klocke v. Watson,*
  936 F.3d 240 (5th Cir. 2019) ..............................*passim*

*La Liberte v. Reid,*
  966 F.3d 79 (2nd Cir. 2020)................................*passim*

*LaNasa v. Stiene,*
  731 F. Supp. 3d 403 (S.D.N.Y. 2024) ...............53-54, 55, 62

*Liberman v. Gelstein,*
  590 N.Y.S.2d 857 (1992) .........................................23

*LoanStreet, Inc. v. Troia,*
  21-cv-6166, 2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023)...............53, 55

*Marks v. United States,*
  430 U.S. 188 (1977) ...............................................68

*Nat'l Acad. of Television Arts and Sciences, Inc. v.*
  *Multimedia Sys. Design, Inc.,*
  551 F. Supp. 3d 408 (S.D.N.Y. 2021) ...................*passim*

*Netzer v. Continuity Graphic Assocs., Inc.,*
  963 F. Supp. 1308 (S.D.N.Y. 1997) ...........................15

*Nunes v. NBCUniversal Media, LLC,*
  643 F. Supp. 3d 403 (S.D.N.Y. 2022) .......................42

*Palin v. New York Times Co.,*
  940 F.3d 804 (2nd Cir. 2019)...................................10

*Partridge v. State,*
    173 A.D.3d 86 (N.Y. 3d Dep't 2019) ...................................... 38

*Prince v. Intercept,*
    634 F. Supp. 3d 114 (S.D.N.Y. 2022) .............................. 45, 53

*Reeves v. Associated Newspapers, Ltd.,*
    218 N.Y.S.3d 19 (1st Dep't 2024) ................................... 56, 57

*Rinaldi v. Holt, Rinehart & Winston,*
    42 N.Y.2d 369 (N.Y. 1977) ............................................ 20, 22

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ....................................................... *passim*

*Sibbach v. Wilson & Co.,*
    312 U.S. 1 (1941) ................................................................... 68

*Sousa v. Roque,*
    578 F.3d 164 (2d Cir. 2009) .................................................. 30

*St. Amant v. Thompson,*
    390 U.S. 727 (1968) ........................................... 34-35, 36, 37

*Stepanov v. Dow Jones & Co. Inc.,*
    120 A.D.3d 28 (N.Y. 1st Dep't 2014) ................................... 38

*Stern v. Cosby,*
    645 F. Supp. 2d 258 (S.D.N.Y. 2009) .............................. 23, 34

*United States v. Sergentakis,*
    No. 15-CR-2015, 2015 WL 3763988, (S.D.N.Y. 2015) ......................... 31

*United States v. Stevens,*
    559 U.S. 460, (2010) ............................................................. 19

*United States v. Stone,*
    No. 1:19-cr-00018-ABJ, Dkt. No. 1 (D.D.C. Jan. 24, 2019).................. 24

*VIP Pet Grooming Studio, Inc. v. Sproule,*
    224 A.D.3d 78 (2d Dep't 2024) ........................................... 65

*Watson v. NY Doe 1,*
    No. 19-cv-533, 2023WL 6540662 (S.D.N.Y. 2023)................................ 53

## Statutes & Other Authorities:

18 U.S.C. § 1001 ............................................................. 13, 23, 24

18 U.S.C. § 1505 .................................................................. 23, 24

18 U.S.C. § 1512 ......................................................................... 24

18 U.S.C. § 1512(c) .................................................................... 23

28 U.S.C. § 1332 .......................................................................... 3

Cal. Civ. Pro. Code § 425.16(b)(3) ........................................ 46

CPLR 3211(a)(7) ........................................................................ 57

CPLR 3211(g) ..................................................................... *passim*

CPLR 3211(g)(1) ....................................................................... 55

CPLR 3212(h) ............................................................................ 55

Fed. Prac. & Proc. § 1337.2 (4th ed. 2021) ........................... 59

Fed. R. App. P. 4(a)(1) ............................................................... 3

Fed. R. App. P. 32(a)(5) ........................................................... 71

Fed. R. App. P. 32(a)(6) ........................................................... 71

Fed. R. App. P. 32(a)(7)(B) ...................................................... 71

Fed. R. App. P. 32(f) ................................................................. 71

Fed. R. Civ. P. 8 ................................................................. *passim*

Fed. R. Civ. P. 9 ....................................................................... 28

Fed. R. Civ. P. 9(b) ................................................................... 28

Fed. R. Civ. P. 9(g) ................................................................... 28

Fed. R. Civ. P. 11 ................................................... 9, 44, 58, 59

Fed. R. Civ. P. 12 ............................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................... *passim*

viii

Fed. R. Civ. P. 56 ............................................................... *passim*

Local Rule 32.1(a)(4) (A) .............................................. 71

N.Y. Civ. Rts. § 70-a ....................................................... *passim*

N.Y. Civ. Rts. § 70-a(1) ................................... 54, 62, 66

N.Y. Civ. Rts. § 70-a(1)(a) ............................................. 58

O.C.G.A. § 9-11-11.1(b)(1) ......................................... 50

Restatement (Second) of Torts § 571, cmt. g (Am. L. Inst. 1977)......23

Tex. Civ. Prac. & Rem. Code §§ 27.005(b)(1)–(3) ................................ 48

Tex. Civ. Prac. & Rem. Code § 27.005(c) ................................ 48

Tex. Civ. Prac. & Rem. Code § 27.005(d) ................................ 48

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 112 at 791 (5th ed. 1984)......................................25

## PRELIMINARY STATEMENT

The district court erred in finding Ms. Tarlov's statements to be non-defamatory, that the Complaint lacked allegations of actual malice, and that Appellants Stefan Passantino and Anthony Bobulinski had not met the required threshold for damages. Ms. Tarlov unequivocally stated a falsehood not based on the congressional testimony or record—testimony which she must have reviewed. She claimed Mr. Bobulinski's legal fees were paid by a federal Super PAC associated with President Donald J. Trump. When she was confronted with this knowing or, at a minimum, reckless—due to her review of the congressional record—falsehood, she tried to avoid taking responsibility.

Rather than make a straight retraction, she equivocated and implied she had acted without knowledge in the first instance, despite reviewing the congressional records, and failed to fully withdraw the thrust of her original statement—that Mr. Bobulinski was less than truthful in his testimony to the United States Congress and that his lawyer facilitated such testimony to advance the interests of a party other than Mr. Bobulinski.

1

The district court erred by focusing too narrowly on Ms. Tarlov's statements and ignoring critical context, highlighted during oral argument, which demonstrated the plausible defamatory meaning of the statements. An accusation that testimony to Congress is less than fully truthful implies a violation of a solemn oath and a criminal act, and therefore, is defamatory per se. Moreover, this statement, made with no basis in fact or in the context of the information available, including the Congressional testimony and record, which Ms. Tarlov reviewed, is a complete fabrication, showing her actual malice.

In addition, the district court erred when it broke from the well-settled precedent demonstrating New York's anti-SLAPP law does not apply in federal court and granted a request for fees contained in Ms. Tarlov's motion to dismiss. Therefore, Messrs. Bobulinski and Passantino respectfully request this Court reverse the decision of the district court and return this matter to the district court for further proceedings in accordance with such ruling.

## JURISDICTIONAL STATEMENT

The district court had statutory jurisdiction because the claims present questions arising under diversity jurisdiction between individuals from different states with complete diversity and presenting more than $75,000 in damages. *See* 28 U.S.C. § 1332. The District Court for the Southern District of New York entered a final judgment on November 26, 2024. Joint Appendix ("JA") at A-118. Appellant filed a timely notice of appeal on December 26, 2024, within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1). *Id.* at JA-119. Therefore, this Court has jurisdiction to hear this appeal.

## STATEMENT OF ISSUES

There are three issues for review, each subsequent issue must only be reached if the prior issue is answered in the negative:

1. Whether the district court erred when it found Mr. Bobulinski and Mr. Passantino did not state a claim for defamation, defamation by implication, and injurious falsehood.

3

2. Whether the district court erred when it found the New York anti-SLAPP law applicable in federal court.

3. Whether a separate motion is required for an anti-SLAPP motion under New York law in federal court.

## STATEMENT OF THE CASE

On March 20, 2024, Mr. Bobulinski, with his attorney, Mr. Passantino, also present, testified before the United States House of Representatives Committee on Oversight and Accountability as to conduct he witnessed by Joseph Biden, Hunter Biden, and the Biden family's business associates. *See* JA at A-12, ¶ 20. That same day, Ms. Tarlov, host of the most-watched cable news program, declared live, on-air that Mr. Bobulinski's "lawyers' fees have been paid by a Trump Super PAC." *Id.* at A-14, ¶¶ 28–29. She added, "[t]hat's as recent as January." *Id.* at A-14, ¶ 29. Ms. Tarlov was aware this was not true but said it to impugn Appellants' character after Mr. Bobulinski's testimony against the Bidens. *Id.* at A-14, ¶ 30.

On March 21, 2024, Appellants sent a demand letter to Ms. Tarlov, demanding a retraction and apology. *Id.* at A-14, ¶ 31. Rather than doing

4

so, Ms. Tarlov merely noted that she had not seen evidence that Mr. Bobulinski's lawyers' fees were paid by a Trump PAC while omitting critical context as to what happened and was said at the hearing. *Id.* at A-14, ¶ 32. Ms. Tarlov made it a point to note that she was not apologizing for her previous falsehood. *Id.* at A-15, ¶ 34. In doing so, Ms. Tarlov left reasonable viewers with an impression that Mr. Bobulinski's lawyers' fees for his voluntary appearance may, in fact, have been paid by a Trump Super PAC. *Id.* Accordingly, on March 22, 2024, Appellants gave Ms. Tarlov a second chance and sent another demand letter to her, which she rebuked. *Id.* at A-15, ¶ 33.

Therefore, on March 28, 2024, Appellants brought this lawsuit to hold Ms. Tarlov accountable for her knowing or reckless lie. *Id.* at A-8– A-25. Ms. Tarlov moved to dismiss on May 20, 2024. *See id.* at A-33–A- 34. After briefing, the district court heard oral argument on October 24, 2024, and issued an opinion granting Ms. Tarlov's motion to dismiss and request for fees on November 26, 2024. *Id.* at A-84–A-118. Mr. Bobulinski and Mr. Passantino timely appealed this decision to this Court on December 26, 2024. *Id.* at A-119.

5

## SUMMARY OF THE ARGUMENT

The district court erred when it determined Ms. Tarlov's statements were not capable of defamatory meaning based on a narrow view of the context surrounding those statements. In short, Ms. Tarlov falsely alleged Mr. Bobulinski's attorneys' fees were being paid by a political entity associated with President Donald J. Trump as a means of criticizing Mr. Bobulinski's testimony. An average viewer of this testimony could conclude Ms. Tarlov's statement meant Mr. Bobulinski's testimony was bought and paid for by this payment. Such an allegation is tantamount to alleging a violation of Mr. Bobulinski's oath to tell the truth, the whole truth, and nothing but the truth before Congress, also known as perjury.

As for Mr. Passantino, Ms. Tarlov's remarks essentially accuse him of suborning this less than fully truthful testimony. Both of these allegations are defamatory per se as they accuse each Mr. Bobulinski and Mr. Passantino of criminal act, and at a minimum of conspiring to avoid the duty to present nothing but the whole truth to Congress.

Ms. Tarlov's "correction" did not dispel the specific sting of her prior statement. She opted to obfuscate and rather than a straightforward and simple retraction, she chose to vaguely imply only that Mr. Bobulinski denies her statement and she has seen no evidence supporting her statement. This did little to nothing to change the defamatory sting of her statement.

Moreover, Ms. Tarlov made the statement, as admitted, with no factual foundation, evincing actual malice. Even upon her "correction", she did not expressly withdraw her statement, which she admitted was a complete fabrication, but simply qualified it. Creating a defamatory statement from whole cloth is evidence of actual malice, particularly when paired with Ms. Tarlov's avoidance of the truth; ill will towards Mr. Bobulinski, Mr. Passantino, and President Trump; and political and personal animus.

Furthermore, in her follow-up statement, Ms. Tarlov offered a half-hearted, and incomplete, attempt at a retraction. She noted that "[w]hat was actually said" was that a Trump PAC had paid Mr. Passantino's firm, and she had seen "no indication" that those payments were connected to Mr. Bobulinski's representation. By saying, "[w]hat was actually said at

the hearing," however, Ms. Tarlov left the wrong impression with the show's viewers, which was her intention. Specifically, Ms. Tarlov intended to convey the implied belief that the subject of Mr. Bobulinski's legal fees was a matter of determined fact resulting from the hearing, when in fact it was part of a bombastically partisan attack by a Democrat Representative to undermine Appellants' credibility. The omission of this critical context left viewers with a reasonable interpretation that there was actually a question of whether a Trump Super PAC was paying for Mr. Bobulinski's attorney's fees. Ms. Tarlov was on notice that her claims were false because she created them from whole cloth, exhibiting her actual malice.

Finally, the district court erred in dismissing Mr. Passantino's injurious falsehood claim. Ms. Tarlov's statements attacked and impugned Mr. Passantino's services as an attorney. The statements implicate that Mr. Passantino committed ethical violations by facilitating false testimony and using the law to advance a political agenda. This goes directly to Mr. Passantino's services as an attorney. Thus, the statements can qualify as both defamation and injurious falsehood.

The district court, therefore, also erred when it found Ms. Tarlov was entitled to attorneys' fees. Even if this Court were to find Messrs. Bobulinski's and Passantino's claims were not plausible, this Court should reverse the district court's order granting fees. The New York anti-SLAPP statute generally does not apply in federal court because it is procedural, rather than substantive. Multiple courts in this Circuit have already settled this issue. The New York anti-SLAPP conflicts with the provisions of Federal Rules of Civil Procedure 8, 11, 12, and 56 regarding the determination of pretrial dismissal and attorney's fees. Further, none of these Rules violate the Rules Enabling Act. Accordingly, the inquiry ends there, and the Federal Rules apply, not New York's procedural law. In addition, it was improper for Ms. Tarlov to seek fees under the New York anti-SLAPP through a motion to dismiss rather than a separate filing. Therefore, this Court should reverse the district court's decision and return this case for proceedings in compliance with such order.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *La Liberte v. Reid*, 966 F.3d 79, 85 (2nd Cir. 2020) (citing *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2nd Cir. 2019) (quoting *Elias v. Rolling Stone, LLC*, 872 F.3d 97, 104 (2nd Cir. 2017))). Therefore, to

10

survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Court reviews a district court's grant of a motion to dismiss *de novo. La Liberte*, 966 F.3d at 85 (citations omitted). Likewise, this Court reviews *de novo* whether New York's anti-SLAPP law applies. *Id.*

## ARGUMENT

## I.    Appellants Stated a Claim for Defamation.

A claim for defamation in New York has four elements: (1) a "defamatory statement," (2) "published to a third party," (3) "made with the applicable level of fault," (4) causing special damages or qualifying as defamation per se. *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011). Ms. Tarlov did not contest that her statements were published to a third party, but she did contend that Appellants have failed to adequately establish the other three elements. The district court found in Ms.

11

Tarlov's favor and determined Appellants did not plead a defamatory meaning, actual malice, or damages. This Court should reverse those findings.

### a. The district court erred when it found that Ms. Tarlov's statements were not defamatory.

As alleged, and taken as true, Ms. Tarlov's statement—"Tony Bobulinski's lawyers' fees have been paid by a Trump Super PAC. That's as recent as January"—is false. JA at A-19, ¶¶ 47, 48. And while a claim that someone's attorney's fees are being paid by someone else might not *ordinarily* be defamatory, in the context of these remarks and of this case, *it is*.

As an initial matter, the district court misunderstood Appellants' arguments. As for Mr. Bobulinski, the district ruled that connecting Mr. Bobulinski to the President would not be defamatory. *See* JA at A-90–A-91. Appellants do not argue it generally would be. Instead, as discussed, Appellants have argued connecting Mr. Bobulinski to the President, with an implication that Mr. Bobulinski's sworn testimony as a witness before Congress—required to tell the truth, the whole truth, and nothing but

12

the truth or face penalties of perjury—was given with a slanted purpose and was less than entirely truthful in violation of his oath, is defamatory.

A court must look at the entire context of a statement to determine whether it is defamatory. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 363 (S.D.N.Y. 1998). The context of this statement is critical to understanding the defamatory meaning of Ms. Tarlov's statements. Mr. Bobulinski was a witness before the United States Congress where he testified about alleged improprieties of the President of the United States and members of his family, during his reelection campaign. Ms. Tarlov then suggested Mr. Bobulinski's testimony was paid for by a Super PAC affiliated with President Biden's political opponent. A witness before Congress is required to tell the truth or face penalties of perjury. 18 U.S.C. § 1001 (establishing the penalties for providing untruthful information to any branch of Government). A congressional witness takes an oath to tell the truth, the whole truth, and nothing but the truth, and Mr. Bobulinski took that oath. *See, e.g.,* Influence Peddling: Examining Joe Biden's Abuse of Public Office, Hearing before the House Committee on Oversight and Government Reform (March 20, 2024) (statement or testimony of Anthony Bobulinski, Lev Parnas, and Jason Galanis), at

13

48:45–49:08 (swearing in the witnesses who all affirmed their testimony would be the truth, the whole truth, and nothing but the truth) *available at* https://oversight.house.gov/hearing/influence-peddling-examining-joe-bidens-abuse-of-public-office/.

Considered in context, the average viewer of Ms. Tarlov's statements could reasonably view her statement as meaning Mr. Bobulinski's testimony was bought-and-paid-for by President Trump and, therefore, less than the truth, the whole truth, and nothing but the truth, as required. This understanding is both plausible and defamatory. A reasonable viewer, knowing Ms. Tarlov to be a prominent political commentator, well known for her support of President Biden and hostility toward President Trump and his supporters, would understand her statement to be more than innocuous reporting that Mr. Bobulinski's legal fees were not only paid by someone else, but also by a Super PAC of President Trump. A reasonable viewer would understand the defamatory meaning and implication that Mr. Bobulinski committed perjury, and that his bought-and-paid-for attorney suborned this perjury to benefit President Trump.

14

In *Jewell v. NYP Holdings, Inc.*, the defendant made a similar argument as Ms. Tarlov did below—that the statement could not be construed as defamatory because it was generally an innocuous statement. *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 363 (S.D.N.Y. 1998). Specifically, in *Jewell*, the defendant said the plaintiff was "seeking media attention," which, like the statements here, would generally not be defamatory. *Id.* The *Jewell* court disagreed, stating:

> While under some circumstances a statement that an individual sought media attention may be incapable of a defamatory meaning, here, when viewed in its broader context, the statement is capable of a defamatory meaning.

*Id.* In *Jewell*, the statement came in the context of the defendant discussing why the plaintiff lost employment. *Id.* This added context made it so at least one interpretation of the statement could be defamatory, and when a "statement complained of is susceptible of more than one meaning, at least one of which is defamatory, the claim must go to the jury." *Id.* (citing *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1324 (S.D.N.Y. 1997)).

Similarly, here, the context is important to determine whether a statement that may otherwise be innocuous, is in fact defamatory. Ms.

Tarlov's statement occurred during her "attempt to discredit Mr. Bobulinski's testimony to the United States House of Representatives Committee on Oversight and Accountability and to besmirch the character of both Plaintiffs." JA at A-14, ¶ 30. As a well-known and indisputably Democratic political commentator,[1] Ms. Tarlov was doing so to serve her party's political agenda. *Id.* at A-8, ¶ 1. In addition, Ms. Tarlov must have reviewed the committee hearing where Mr. Bobulinski took an oath to tell the truth, the whole truth, and nothing but the truth.[2]

Given this context, even assuming Appellee's statement about the source of funding for attorney's fees *could be* otherwise innocuous, it took on a defamatory meaning, as intended. A reasonable and plausible interpretation of Ms. Tarlov's statement suggested Mr. Bobulinski's testimony was untruthful—*i.e.*, perjury—due to his counsel receiving payment for his representation of Mr. Bobulinski from an entity

---

[1] Jessica Tarlov (@JessicaTarlov), X, https://x.com/JessicaTarlov (last visited Feb. 25, 2025) (writing in her X bio that she is a "defender of Democrats (when it makes sense) …").

[2] It is also plausible that Ms. Tarlov would be generally aware of this requirement for witnesses before Congress given her position as a political commentator.

associated with President Trump. The statement "inherently causes people to view Mr. Bobulinski as untrustworthy, by negatively implying that his testimony is bought and paid for," and implies that "Mr. Passantino was part of a scheme to present politically motivated and improperly paid-for tainted testimony in violation of his ethical duties." *Id.* at A-20–A-21, ¶¶ 50–51. Specifically, it implies that Mr. Bobulinski lied to Congress and made up a false story to serve a political agenda and that Mr. Passantino facilitated such conduct—*i.e.*, suborning perjury.

The district court erred when it failed to credit the plausible defamatory meaning of Ms. Tarlov's words. *See* JA at A-89–A-92. The district court gave short shrift to, and did not meaningfully engage with, the arguments presented. Instead, it ignored the context of Ms. Tarlov's comments, focusing only on the specific contents of the comments themselves linking Mr. Bobulinksi and Mr. Passantino to President Trump or an affiliated entity. See *id.* The only support the district court offered for its decision is the conclusion that Mr. Bobulinski's argument is a "strained or artificial construction." *Id.* at A-91 (citing *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (N.Y. 1985). Yet, the district court did not support this conclusion with any analysis beyond simply stating that Mr.

17

Bobulinski did not also prove that Ms. Tarlov intended or endorsed the defamatory meaning, except by the citation to the claim showing that he did plead factual support. *Id.* at A92. In *Aronson*, the court reaffirmed that "[t]he words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader." 65 N.Y.2d at 594. Only "if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Id.* (citations omitted).

Here, the interpretation is not stained or artificial but is a logical and natural reading in the entire context. Therefore, the district court erred when it found that there is no defamatory meaning in Ms. Tarlov's statements.

To the extent Appellees or the district court argued any chilling of speech related to the defamatory meaning should sway this determination, such an argument is premised upon a misunderstanding of law. Specifically, such an argument improperly conflates the consideration of whether a statement is defamatory with whether the statement could result in self-censorship, which is considered with state of mind rather than with defamatory meaning.

Defamatory speech is historically unprotected. The Supreme Court recently reaffirmed "[f]rom 1791 to the present," the First Amendment has "permitted restrictions upon the content of speech in a few limited areas." *Counterman v. Colorado*, 600 U.S. 66, 73–74 (2023) (citing *United States v. Stevens*, 559 U.S. 460, 468, (2010)). One such area "is defamation—false statements of fact harming another's reputation." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 342 (1974)). The Supreme Court "has 'often described [those] historically unprotected categories of speech as being of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest' in their proscription." *Id. (citing Stevens*, 559 U.S. at 470 (internal quotation marks omitted; emphasis deleted)).

In *Counterman*, the Court was careful to explain that, while false statements have no constitutional protection, the actual malice standard is designed to prevent chilling speech. *Id.* at 76. The Court's careful explanation evinces that the district court erred in crediting any argument based on the chilling of others' speech in determining whether Ms. Tarlov's speech could be defamatory.

19

Therefore, Ms. Tarlov's statements plausibly accuse Mr. Bobulinski of being less than fully truthful with Congress in violation of his oath and committing perjury. This, in turn, "expose[s] [Appellants] to public contempt, ridicule, aversion or disgrace, or induce[s] an evil opinion of [them] in the minds of right-thinking persons, and [] deprive[s] [them] of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751 (N.Y. 1996) (quoting *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379 (N.Y. 1977)). Accordingly, at this stage, Messrs. Bobulinski and Passantino met their burden to show a plausible defamatory meaning in Ms. Tarlov's statement, making this a question for the jury. Notwithstanding the district court's unnecessary political commentary that the general audience of *The Five* would view a connection to the President as a good thing, *see* JA at A-90, an assertion of bought-and-paid-for testimony that is less than the truth, the whole truth, and nothing but the truth, is necessarily seen through a negative lens, rendering it defamatory in context.

Turning to Mr. Passantino, the district court found his defamation claim fails because he *has* been paid by a Trump PAC in the past. *See Id.* at A-92–A-93. Again, this ignores the well-pled allegations of the

20

Complaint and the context of Ms. Tarlov's statements. Only by constraining consideration of the statements to association with President Trump and any related political entities could the district court have arrived at its conclusion. This is error because context is required to understand defamatory import.

Ms. Tarlov's statements, in context, include both the above allegations against Mr. Bobulinski, along with the allegation that Mr. Passantino facilitated the testimony of Mr. Bobulinski. Therefore, to the extent that Mr. Bobulinski has plausibly pled Ms. Tarlov accused him of perjuring himself for the benefit of President Trump, she is also accusing Mr. Passantino of suborning perjury for the benefit of another client, which is defamatory.

The district court also held Ms. Tarlov's statements were not capable of a defamatory implication. As for Mr. Bobulinski, the district court found that he did not plead the defamatory implication that Appellee intended. *See* JA at A-91. This flies in the face of the well-pled allegations of the Complaint, which the district court itself cited and are included above.

21

As for Mr. Passantino, the district court found the implication he presented tainted testimony in violation of his ethical duties "requires even more logical jumps than the one offered by Bobulinski." *Id.* at A-93. A reasonable viewer, however, may very well disagree for the same reasons described in detail above. Mr. Passantino's damages flow directly from the allegations against Mr. Bobulinski. Therefore, the district court erred in finding Ms. Tarlov's statements were not capable of defamatory meaning as applied to each Appellant.

### b.   The statements were defamatory *per se.*

#### 1. Because the statements were defamatory *per se*, Appellants are not required to plead special damages.

Not only was Ms. Tarlov's statement defamatory, but it was also defamatory *per se.* In New York, slander *per se* has four categories: "(i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001) (citations omitted). A court in this Circuit recently found a "statement constitutes slander *per se* when it 'is so egregious that it is presumed to cause serious harm.'" *Chavez v.*

*Finney*, No. 19-cv-4109, 2022 WL 874716, at \*11 (S.D.N.Y. Mar. 23, 2022) (quoting *Stern v. Cosby*, 645 F. Supp. 2d 258, 272 (S.D.N.Y. 2009)).

As for Mr. Bobulinski, first and foremost, Ms. Tarlov's statement minimally implies that he violated the oath he took to tell the truth, the whole truth, and nothing but the truth. More concerningly, Ms. Tarlov's statement accuses Mr. Bobulinski of committing a crime by violating his oath to Congress. Pursuant to 18 U.S.C. § 1001, it is a crime to make "any material false, fictitious, or fraudulent statement or representation" to any branch of the U.S. Government. Notably, in listing crimes that qualify as defamatory *per se*, the Southern District of New York included perjury on that list. *Erdman v. Victor*, No. 20-cv-4162, 2021 WL 5359660, at \*3 (S.D.N.Y. Nov. 17, 2021) (citing *Liberman v. Gelstein*, 590 N.Y.S.2d 857, 861 (1992) (citing RESTATEMENT (SECOND) OF TORTS § 571, cmt. g (Am. L. Inst. 1977)).

Ms. Tarlov's statement also implies violations of 18 U.S.C. § 1505 for obstruction of proceedings and 18 USC § 1512(c) for obstructing, influencing, or impeding an official proceeding. Importantly, each of the foregoing statutes are actively used in the District of Columbia, making Ms. Tarlov's statement that much more reckless. *See United States v.*

23

*Stone*, No. 1:19-cr-00018-ABJ, Dkt. No. 1 (D.D.C. Jan. 24, 2019) (charging Mr. Stone with violations of 18 U.S.C. §§ 1001, 1505, 1512). Therefore, Ms. Tarlov's statement qualifies as defamation *per se*.

Moreover, the simple allegation Mr. Bobulinski violated his oath before Congress is egregious enough to rise to the level of defamatory *per se* as it is likely to injure Mr. Bobulinski in his trade, profession, and business by virtue of the fact that a reputation for truthfulness is inherent and required in all business endeavors. While Ms. Tarlov and the district court attempt to paint the testimony as detached from Mr. Bobulinski's business, Mr. Bobulinski was testifying about his former business relationships, including those with Hunter and Joe Biden. *See* JA at A-12, ¶ 20. Ms. Tarlov's statement implied, as she intended, that Mr. Bobulinski's testimony about his prior business dealings was untrustworthy. A reasonable person, upon hearing someone lied about their past business ventures, would avoid doing business with that person in the future. As this Court has found, a statement that impugns someone's trustworthiness, causing people to question their "professional integrity," qualifies as defamation *per se. Celle v. Filipino Reporter*

24

*Enterprises Inc.*, 209 F.3d 163, 185–86 (2d Cir. 2000). Accordingly, Ms. Tarlov's statement qualifies as defamation *per se* on this basis as well.

Finally, as for Mr. Passantino, Ms. Tarlov's statement directly attacks and impugns Mr. Passantino's veracity for truthfulness and his oath and obligations taken on as an attorney and officer of the court. A court in this Circuit addressed one of the quintessential examples of defamation *per se* is saying "an attorney . . . is a shyster." *DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634, 649 n.14 (S.D.N.Y. Nov. 9, 2011) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 112 at 791 (5th ed. 1984)). Here, Ms. Tarlov went far beyond calling Mr. Passantino a "shyster," by maliciously implying that he was directly or complicitly presenting, through his client, testimony that was less than the truth, the whole truth, and nothing but the truth to the United States Congress. This directly attacked Mr. Passantino's professional integrity and injured him in his trade and profession.

Despite the inherent impact of her defamatory statements, Ms. Tarlov spent much of her argument below discussing how Mr. Passantino's conduct was not unethical. While the time to have said this was during the airing of her defamatory comments on The Five, and on

25

national television, and Mr. Passantino appreciates Ms. Tarlov's belated change in tone, it does not minimize the harm her statement caused Mr. Passantino at the time of publication. In fact, Ms. Tarlov invited the district court to take a narrow view of this issue, which the district court incorrectly did. Even if Mr. Passantino would not otherwise be subject to the disciplinary process for the receipt of funds from a third-party, her statement still impacted Mr. Passantino in his profession by calling into question his truthfulness and integrity as an attorney.

Ms. Tarlov incredibly argued that, if her lie is defamatory *per se*, and she is held accountable, that it would chill free speech because journalists will not be able to question a person's credibility. *Bobulinski v. Tarlov*, No. 1:24-cv-02349, Dkt. No. 19 at 18 (S.D.N.Y May 20, 2024) ("Dkt. No 19"). This is not so. Journalists are free to question a person's credibility as much as they want with truthful statements. Truthful statements are protected by the First Amendment. As outlined above, however, freedom of speech is not absolute, and the chilling effect argument only applies to the actual malice element, which is considered below. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942); *Counterman,* 600 U.S. at 73–76 (explaining the actual malice standard

26

is the mechanism to prevent chilling speech, not the determination whether speech is defamatory *per se*). It does not embrace or excuse defamation. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245–46 (2002). Importantly, "[f]reedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J. concurring). Therefore, any chilling argument is misplaced and should not persuade the Court in relation to consideration of this element. Thus, the district court erred when it determined that the statements were not defamatory *per se*.

### 2. *Even if the statements are not defamatory* per se, *Appellants met the standard under the Rules for pleading special damages, and the district court erred in not granting leave to amend.*

If this Court agrees with the district court that Ms. Tarlov's statement does not qualify as defamation *per se*, it should still reverse the lower court's decision because Appellants met their burden at the pleading stage by pleading special damages. Ms. Tarlov sought a strict approach to pleading special damages; however, as some federal courts have recently found, such a strict approach is contrary to the Federal

27

Rules. While Rule 9(b) requires allegations to be made with particularity, Rule 9(g), which governs pleading special damages, contains no such requirement. Fed. R. Civ. P. 9.

Accordingly, in a recent Southern District of Florida case, it was sufficient for the plaintiff to "allege lost sales, profits, and goodwill" to properly plead special damages. *ADT LLC v. Vivant Smart Home, Inc.*, No. 20-cv-23391, 2021 WL 4478932, at *3 (S.D. Fla. Sept. 30, 2021). As that court noted, "Rule 9(g) merely requires that special damages be 'specifically stated,' not that they be stated 'with particularity' as is required of allegations of fraud and mistake under Rule 9(b) . . . ." *Id.* Likewise, in the Eastern District of Pennsylvania, it was sufficient for the plaintiff to merely identify the nature of the damages as general or special and note that they were seeking "a sum in excess of $10,000.00." *In re King's Place, Inc.*, 6 B.R. 305, 309 (E.D. Pa. 1980). This is because the plaintiff was "specific" in their pleading as to what damages they were seeking, as the rule requires. *Id.*

Applying the same standard here, pursuant to the plain language of Rule 9(g), Appellants have met their burden. As pled, Ms. Tarlov's statement harmed Appellants in their business ventures and profession,

28

including reputationally. *See* JA at A-20, ¶ 52. Mr. Bobulinski is engaged in various business ventures involving tens of millions of dollars and high-net-worth counterparts and clients, such as the investment company he was part of when in business with the Biden family.

Likewise, Mr. Passantino is a highly accomplished attorney with over thirty years of experience, including as the most senior ethics attorney in President Trump's first-term White House. *Id.* at A-13, ¶ 22. Ms. Tarlov's false statement, on national television, has significantly impacted Mr. Passantino's professional, reputational, and business interests.

Appellants have each been deprived of business opportunities with existing and potential clients by virtue of Ms. Tarlov's conduct. Appellants explicitly sought special damages in the Complaint for exactly these reasons, and Appellants have met their burden at the pleading stage. *Id.* at A-20–A-21, ¶ 54. Accordingly, the district court erred when it found that special damages were not adequately pled, and its decision should be reversed. At a minimum, the district court erred in denying Appellants' request for leave to file an amended complaint to expand upon these allegations.

### c.   Ms. Tarlov acted with the requisite intent.

#### 1. *A negligence standard applies.*

Because both Appellants are not public figures, and the source of Mr. Bobulinski's lawyers' fees is not a matter of public concern, the negligence standard should apply to their claims. The district court's decision to the contrary was reversible error.

First, "a matter of public concern 'relates to any matter of political, social, or other concern to the community.'" *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014) (quoting *Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009)). Importantly, personal grievances do not fall within this category. *Id.* Here, Ms. Tarlov's own contrived thoughts about Mr. Bobulinski's credibility do not concern the public. Rather, it is the product of her own personal grievance and political beliefs.

Second, to the extent Appellants have become limited purpose public figures, it is because of Ms. Tarlov's conduct, not their own. The majority of Ms. Tarlov's argument regarding Appellants' public stature centers on various media articles about them. This ignores, however, that "[a] person may generally not be made a public figure through the unilateral acts of another." *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 44 (1st

Dept. 2021) (citing *United States v. Sergentakis*, No. 15-CR-2015, 2015 WL 3763988, at *6, (S.D.N.Y. 2015)). Further, at the time, Mr. Passantino was no longer working as a government employee and was merely representing his client in a private capacity. It is unclear how a lawyer would become a public figure by representing his client in his personal capacity. Thus, a negligence standard applies, and Ms. Tarlov's conduct, as described below, rises well above negligence.

### 2. *Appellants adequately pled actual malice.*

Even if Appellants were public figures, or this was a matter of public concern, their Complaint meets the pleading standard for actual malice. There are many ways to show actual malice:

> As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration.

*Herbert v. Lando*, 441 U.S. 153, 164 n. 12 (1979). Typically, actual malice is shown by an "accumulation" of evidence and inferences. *Celle*, 209 F.3d at 183. At the pleading stage, Appellants' Complaint plausibly alleges that Ms. Tarlov acted with actual malice in defaming them.

As pled, Ms. Tarlov is a host of the most-watched cable news program. JA at A-14, ¶ 28. Ms. Tarlov, therefore, has more resources than most to know that her statement was, in fact, false. *Id.* at A-16, ¶ 39. Beyond merely being paid to comment on politics, which necessarily includes payment for her knowledge developed over time from her own independent research, she has access to the resources of Fox News as well and is required to speak truthfully while making statements of fact. All PAC payments are publicly available from the Federal Election Commission ("FEC"), and none show payment for Mr. Bobulinski's legal fees or for his Congressional testimony. *Id.* at A-17, ¶ 41. Through a segment on Fox News, Ms. Tarlov deliberately or recklessly lied about Appellants to undermine their credibility, testimony, and reputation, to garner media headlines, and promote her political agenda and personal advancement. *Id.* at A-8, ¶ 1. Moreover, Ms. Tarlov reviewed the hearing in question and the documents admitted into the record at that hearing.

Therefore, she was aware when she spoke that her statement was incorrect because she had seen the hearing and misrepresented part of that hearing.

In addition, Ms. Tarlov is a Democratic strategist with a "pattern of hostile and malicious intent to defame the character and reputation of anyone associated with President Trump." *Id.* at A-16, ¶ 36. Ms. Tarlov has even attacked Mr. Bobulinski in the past, baselessly questioning his credibility. *Id.* at A-18, ¶ 44. Ms. Tarlov even went out of her way to avoid retracting her false statement and making a point that she was *not* apologizing. *Id.* at A-15, ¶ 34. Thus, as pled,

> Defendant published the defamatory statements knowingly, intentionally, willfully, wantonly, and maliciously, with intent to harm Messrs. Bobulinski and Passantino, or in blatant disregard for the substantial likelihood of causing them harm and were part of a well-established malicious pattern by Defendant.

*Id.* at A-20, ¶ 53.

Given the publicly available filings and her actual knowledge of them, as well as Ms. Tarlov's experience in media and politics, and the multiple instances of her previously demonstrated ill will toward Mr. Bobulinski specifically and individuals connected with President Trump

generally, at the very least, she was "grossly irresponsible in publishing her lies." *Id.* at A-19, ¶ 49. *See, e.g., Stern*, 645 F. Supp. 2d 258, 279 (S.D.N.Y. 2009) ("printing a claim that Birkhead and Stern had sex would be a way to make it to the top of the bestseller list, and a reasonable jury could find that Cosby ignored the inherently improbable nature of the Statement in her zeal to write a blockbuster book").

Ms. Tarlov was at least willfully blind to the truth, which was readily available through a free government website of which even a neophyte political commentator would be aware. Rather than asking a Fox News researcher or investigator to verify the facts or researching the data herself, Ms. Tarlov recklessly declared her statements to be factual to millions of viewers. The district court did not even consider the avoidance of the truth issue below, which was also error. Ms. Tarlov witnessed the hearing and specifically did not take any action to attempt to verify the allegation before repeating it on air to millions of viewers.

Although courts have found failure to investigate alone will not support a finding of actual malice, the purposeful avoidance of the truth is in a different category. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *see also St. Amant v. Thompson,*

390 U.S. 727, 731, 733 (1968)). In *Connaughton*, the Supreme Court found that a newspaper's deliberate decision to avoid information that might have proven the story false was relevant to the issue of actual malice. *Connaughton*, 491 U.S. at 685, 693. Specifically, the Supreme Court determined the newspaper relied upon a single source to accuse a candidate for public office of using "dirty tricks" to influence a grand jury investigation so as to cast doubt upon his opponent. In doing so, the newspaper failed to review audiotapes and speak with other witnesses who would have shown that their article was false. *Id.* at 682–83. The Supreme Court found that this purposeful avoidance of the truth supported a finding of actual malice because it was "likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the] charges." *Id.* at 692.

Here, the information to verify the truth or falsity of Ms. Tarlov's anticipated statement was readily available, but she chose not to seek it out before recklessly spreading her falsehood to millions of viewers. While Ms. Tarlov self-servingly stated, a day after making the initial false statement, that she did not actually have any evidence of Mr.

35

Bobulinski's lawyers' fees being paid by a Trump Super PAC and was instead relying on "what was said at the hearing"—while omitting the context from the hearing—this does little to change the actual malice analysis. *See Bass v. United Development Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976, at *22 (Tex. App. Dallas 2019) ("Proof of actual malice is not defeated by a defendant's self-serving protestation of sincerity.").

Appellants have met their burden by plausibly alleging sufficient facts to show that Ms. Tarlov published her false statement with actual malice. *See Bolden v. Morgan Stanley & Co.*, 765 F. Supp. 830, 834 (S.D.N.Y. 1991) (the "aggregate of plaintiff's evidence" showed actual malice). At the very least, Appellants are entitled to discovery to determine what information Ms. Tarlov had, including pre-show production meetings, before making such an incendiary claim.

Additionally, as the Supreme Court noted, "[p]rofessions of good faith will be unlikely to prove persuasive, for example where a story is fabricated by the defendant [or] is the product of his imagination." *St. Amant*, 390 U.S. at 732. The Seventh Circuit built on this holding in *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976).

36

In *Carson*, the Seventh Circuit noted that "*St. Amant* expressly gives as another example of reckless disregard for the truth any 'product of (one's) imagination.'" *Carson*, 529 F.2d at 213 (quoting *St. Amant*, 390 U.S. at 732). Therefore, the Seventh Circuit found that because the defendant "completely fabricated" its accusations against the plaintiff, the plaintiff was entitled "to a jury's determination of whether actual malice existed." *Id*. Indeed, "[t]he defendants in fabricating and imagining 'facts' necessarily entertained serious doubts as to the truth of the statements and had a high degree of awareness of their probable falsity." *Id*.

Likewise, here, Appellants are entitled to a jury determination of whether Ms. Tarlov acted with actual malice. Ms. Tarlov entirely fabricated an event that Mr. Bobulinski's legal fees for his congressional testimony were paid for by a Super PAC affiliated with President Trump. Yet, this did not happen, and there was nothing to indicate that it happened. Thus, Ms. Tarlov had to have simply fabricated the story. As the Seventh Circuit held:

> If a writer can sit down in the quiet of his cubicle and create conversations as 'a logical extension of what must have gone

on' and dispense this as news, it is difficult to perceive what
First Amendment protection such fiction can claim.

*Carson*, 529 F.2d at 213. Accordingly, the district court may be reversed

on this basis alone.

## II.     Appellants Stated a Claim for Defamation by Implication.

Defamation by implication can occur in one of two ways: through

juxtaposition or omission. *Partridge v. State*, 173 A.D.3d 86, 91 (N.Y. 3d

Dept. 2019). Here, as pled, Ms. Tarlov committed the tort of defamation

by implication through omission. JA at A-21, ¶ 57. This occurs when a

defendant states a series of otherwise true facts but leaves out critical

context, giving rise to a defamatory implication. *Id.* There is a two-part

test: "(1) that the language of the communication as a whole reasonably

conveys a defamatory inference, and (2) that such language affirmatively

and contextually suggests that the declarant either intended or endorsed

the inference." *Id.* at 91-92. (citing *Stepanov v. Dow Jones & Co. Inc.*, 120

A.D.3d 28, 37–38 (N.Y. 1st Dept. 2014)). Notably, there does not appear

to be a requirement for special damages in a defamation by implication

claim.

Here, Ms. Tarlov omitted critical context, leaving a defamatory implication. Specifically, one day after Ms. Tarlov made the false claim that a Trump Super PAC was paying Mr. Bobulinski's lawyers' fees, she offered a half-hearted, and incomplete, attempt at a retraction. She noted that "[w]hat was actually said" was that a Trump PAC had paid Mr. Passantino's firm, and she had seen "no indication" that those payments were connected to Mr. Bobulinski's representation. JA at A-14–A-15, ¶ 32.

As noted in the Complaint, by saying, "[w]hat was actually said at the hearing," Ms. Tarlov left the wrong impression with the show's viewers, which was her intention. Specifically, she intended to convey the implied belief that the subject of Mr. Bobulinski's legal fees was a matter of determined fact resulting from the hearing, when in fact it was part of a partisan performance by a democrat representative, Jasmine Crocket, who theatrically also sought to undermine Appellants' credibility rather than address the substance of Mr. Bobulinski's testimony. *Id.* at A-15, ¶ 33.

Notably, Ms. Tarlov denied not one, but two, opportunities to retract her false statement or otherwise apologize. What Ms. Tarlov

failed to inform her viewers is that Rep. Crockett was also wrongfully conflating the firm's representation of two different clients having nothing to do with each other, expressly intending for viewers to draw a negative inference by omitting context. *Id.* at A-21, ¶ 58. It was a "Democrat Representative attempting to discredit Mr. Bobulinski by nonsensically trying to tie together a true fact that the PAC has paid Stefan Passantino's firm, Elections LLC, in the past for work completely unrelated to Mr. Passantino's representation of Mr. Bobulinski." *Id.* at A-21–A-22, ¶ 59.

By omitting this, Ms. Tarlov left viewers with a reasonable interpretation that there was actually a question of whether a Trump Super PAC was paying for Mr. Bobulinski's attorney's fees. *Id.* at A-22, ¶ 60. And by saying this, in conjunction with her comment that she had not seen any indication of this PAC actually paying Mr. Bobulinski's fees, instead of a full retraction despite knowing the falsity of her statements, Ms. Tarlov left it open to interpretation that it may have actually occurred. *Id.* While Ms. Tarlov disagrees with this interpretation, it does not change the fact that this is, in fact, a logically reasonable

interpretation, properly rendering this a question for the jury. *Jewell*, 23 F. Supp. 2d at 363.

Further, at that point, Ms. Tarlov was fully on notice her previous claims were false, having received a letter noting as such the previous day. *See* JA at A-14, ¶ 31. Rather than taking ownership for her transgressions by admitting this and issuing an appropriate retraction, however, she indicated through artful and ambiguous language that it may actually be true. Ms. Tarlov's experience as a broadcaster, journalist, and professional commentator not only make it plausible, but probable, that this choice of language, and its implication, was deliberate and with actual malice.

Accordingly, at the pleading stage, Mr. Bobulinski and Mr. Passantino sufficiently pled a claim for defamation and defamation by implication. These claims should be decided by a jury to determine the outstanding factual questions.[3] Therefore, they respectfully request that this Court reverse the district court's dismissal.

---

[3] In the district court, Ms. Tarlov argued that she is also protected under the fair report privilege. Dkt. No. 19 at 22. The district court did not rule on the

41

### III.   Mr. Passantino Stated a Claim for Injurious Falsehood.

A claim for injurious falsehood has four elements: "(1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017). Here, Mr. Passantino properly pled (1) Ms. Tarlov made a false statement about the source of payments to Mr. Passantino; (2) Ms. Tarlov intended for her lies to harm Mr. Passantino; and (3) the lies harmed Mr. Passantino's ability to practice law. JA at A-23–A-24, ¶¶ 67–68. At the pleading stage, this is sufficient. Ms. Tarlov's arguments to the contrary fail, and the district court's finding should be reversed.

Injurious falsehood "differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." *Grayson*, 271 F. Supp. 3d at 518

--------

applicability of this privilege. Regardless, because Ms. Tarlov's statements went much further, with more serious accusations/implications than those at the subject hearing, this privilege does not apply. *See Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 413 (S.D.N.Y. 2022) (quoting *Bilinski v. Keith Haring Foundation, Inc.*, 96 F. Supp. 3d 35, 49 (S.D.N.Y. 2015)).

(quoting *Berwick v. New World Network Int'l, Ltd.*, 06 Civ. 2641 (JGK), 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007) (citations and internal quotation marks omitted)).

In *Grayson*, the plaintiff, like Mr. Passantino, was an attorney and brought an action regarding the defendant's statements about the plaintiff's representation of a client. *Id.* at 519. The Southern District of New York found, while the plaintiff was relying on the same statements for their defamation *and* injurious falsehood claims, the majority of the statements could survive both counts. *See generally id.* Specifically, statements about the plaintiff committing ethical violations due to having a conflict of interest could constitute defamation as well as injurious falsehood, subject to special damages, because it implicated "the quality of [the plaintiff's] services." *Id.* at 519.

Similarly, here, Ms. Tarlov's statements are defamatory, and they attack and impugn Mr. Passantino's services as an attorney. As pled, Ms. Tarlov's statement implicates Mr. Passantino committing ethical violations by facilitating false testimony and using the law to advance a political agenda. JA at A-23–A-24, ¶ 67. As in *Grayson*, this goes directly to Mr. Passantino's services as an attorney. Thus, the statement can

43

qualify as both defamation and injurious falsehood, and the district court erred in dismissing this claim.

## IV.  The District Court Erred in Applying New York's Anti-SLAPP Law.

The district court's decision is inherently flawed: it creates a world where any defamation defendant that succeeds in obtaining dismissal under Rule 12(b)(6) would *automatically* be entitled to attorneys' fees under New York's Anti-SLAPP statute. This is not the law and would be akin to automatically awarding Rule 11 sanctions to any defendant who succeeds in a similar pre-trial motion.

As discussed above, Messrs. Passantino and Bobulinski plead their claims sufficiently to survive the pleading standard of a Complaint. Moreover, and more importantly, they made their claims with a substantial basis in fact and law. Therefore, this Court should reverse the district court's imposition of fees. Even if this Court agreed with the district court that Appellants did not state a claim for relief, district courts in New York have consistently held New York's anti-SLAPP law, N.Y. Civ. Rts. L. § 70-a, does not apply in a federal court sitting in diversity. This is because the New York Anti-SLAPP law creates a

heightened pleading standard, above the Federal Rules of Civil Procedure standard, and creates a new burden on the plaintiff bringing a case, which is procedural as opposed to substantive. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022) (collecting cases). Appellee even admitted that New York's Anti-SLAPP requires a "heightened pleadings standard." Dkt. No. 19 at 24. The district court, however, broke from these other cases, finding, under *Erie*, that New York's anti-SLAPP law applies in a federal court sitting in diversity. *See* JA at A-103–A-114.

### a. The Federal Rules apply in place of New York's anti-SLAPP law.

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The first part of the test to determine whether to apply state anti-SLAPP law is to determine whether a Federal Rule of Civil Procedure answers the same question as the state law. *See La Liberte*, 966 F.3d at 87 (quoting *Abbas v. Foreign Policy Grp.*, LLC, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99

45

(2010)). If so, then the second question asks whether the Federal Rule "violates the Rules Enabling Act." *Id.* Courts do not "wade into Erie's murky waters unless the federal rule is inapplicable or invalid." *Shady Grove*, 559 U.S. at 398.

In *La Liberte*, this Court considered the applicability of California's anti-SLAPP law in a federal court sitting in diversity. *La Liberte*, 966 F.3d at 87. California's anti-SLAPP contains a "special motion to strike," which "requires outright dismissal unless the plaintiff can 'establish[ ] a probability that he or she will prevail on the claim.'" *Id.* (quoting Cal. Civ. Pro. Code § 425.16(b)(3)). It requires a "plaintiff to establish that success is not merely plausible but probable." *Id.* (quoting C*arbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1353 (11th Cir. 2018)). Specifically, "[t]he [California anti-SLAPP] statute thus 'establishes the circumstances under which a court must dismiss a plaintiff's claim before trial,' a question that is already answered (differently) by Federal Rules 12 and 56." *Id.* (quoting *Abbas*, 783 F.3d at 1333–34).

The *La Liberte* court noted the pleading burden under Rule 12(b)(6) is simply "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). Under this standard, and

46

contrary to California's anti-SLAPP law, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" so long as it is plausible. *Id.* Under Rule 12, "proof of probability of success on the merits 'is not required in federal courts' to avoid pretrial dismissal.'" *Id.* (quoting C*arbone*, 910 F.3d at 1353). Accordingly, this Court found California's anti-SLAPP "requires the plaintiff to make a showing that the Federal Rules do not require." *Id.*

Having found a Federal Rule of Civil Procedure answered the same question as the California anti-SLAPP law, the Court then turned to whether Rules 12 or 56 violated the Rules Enabling Act. *Id.* at 88. This Court found that it did not. *Id.* Thus, this Court concluded that "federal courts must apply Rules 12 and 56 instead of California's special motion to strike." *Id.*

This is in line with the decisions of other Circuits considering other state anti-SLAPP laws. In *Klocke v. Watson*, the Fifth Circuit considered the Texas anti-SLAPP law. 936 F.3d 240 (5th Cir. 2019). The Texas anti-SLAPP imposes a burden-shifting framework, wherein "if a movant for [the Texas anti-SLAPP] relief shows 'by a preponderance of the evidence' that the action is based on the movant's exercise of the listed rights, a

47

court must dismiss the case." *Id.* at 244 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)–(3)). The court may choose not to dismiss, however, if the non-movant "establishes by clear and specific evidence a prima facie case for each element of the claim in question." *Id.* (quoting § 27.005(c)). But the movant will be entitled to dismissal if the movant then shows "by a preponderance of the evidence each essential element of a valid defense" to the claim. *Id.* (quoting § 27.005(d)).

Ultimately, the Fifth Circuit concluded the Texas anti-SLAPP *did not* apply in a federal court sitting in diversity because Rules 12 and 56 answers the same question as the Texas state law: "what are the circumstances under which a court must dismiss a case before trial?" *Id.* at 245 (citing *Abbas*, 783 F.3d at 1333–34). It further came to this holding because "*Shady Grove* and *Abbas* hold that a state rule conflicts with a federal procedural rule when it imposes additional procedural requirements not found in the federal rules." *Id.* Thus, "[b]ecause the [Texas anti-SLAPP law's] burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court." *Id.*

48

Unlike the Federal Rules, the Texas anti-SLAPP law imposes "judicial weighing of evidence," and thus it exceeds the plaintiff's burden under the Federal Rules. *Id.* at 245. Indeed, "the test of whether a conflict between the Federal Rules and a state statute exists is not whether it is logically possible for a court to comply with the requirements of both, but whether the Federal Rules in question are 'sufficiently broad to control the issue before the court.'" *Id.* (quoting *Carbone*, 910 F.3d at 1355). "Rules 8, 12, and 56 'provide a comprehensive framework governing pretrial dismissal and judgment.'" *Id.* (quoting *Carbone*, 910 F.3d at 1351). Ultimately, "states may not superimpose additional requirements on the Federal Rules where the provisions 'answer the same question.'" *Id.* (citing *Shady Grove*, 559 U.S. 393).

The Eleventh Circuit came to the same conclusion in *Carbone*. There, the Eleventh Circuit analyzed the applicability of Georgia's anti-SLAPP law in a federal court sitting in diversity. *Carbone*, 910 F.3d at 1349. Again, relying on *Shady Grove*, the Eleventh Circuit held, "[a] federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure 'answers the question in dispute.'" *Id.* (quoting *Shady Grove*, 559 U.S. at 398). Only if no Federal

49

Rule "answers the question in dispute, courts undertake an 'unguided *Erie'* inquiry to decide whether to apply the state statute or federal common law." *Id.* (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). The question then was "whether Carbone's complaint states a claim for relief supported by sufficient evidence to avoid pretrial dismissal." *Id.* at 1350. As the Eleventh Circuit found, "Rules 8, 12, and 56 provide an answer." *Id.* In addition to answering the same question as the Federal Rules, Georgia's anti-SLAPP does so in a way that heightens the plaintiff's burden "by requiring the plaintiff to establish 'a probability' that he 'will prevail on the claim' asserted in the complaint." *Id.* (quoting O.C.G.A. § 9-11-11.1(b)(1)).

The *Carbone* court found that, given the breadth of Rules 8, 12, and 56, "[t]hose Rules are 'sufficiently broad' . . . to 'control the issue' before the court, thereby leaving no room for the operation'" of the Georgia's anti-SLAPP law's procedure. *Id.* at 1352 (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)). Therefore, because the anti-SLAPP law imposed a heightened burden, it cannot coexist with the Federal Rules. *Id.* at 1354. The Eleventh Circuit particularly found *Burlington* instructive, wherein while it was possible to apply both the state law and

50

the Federal Rule, the two conflicted and, therefore, the Federal Rule exclusively applied. *Id.* at 1355 (citing *Burlington*, 480 U.S. at 7–8).

Finally, the D.C. Circuit came to the same conclusion in *Abbas*. In *Abbas*, the D.C. Circuit analyzed the applicability of D.C.'s anti-SLAPP law, which proscribes "the circumstances under which a court must dismiss a plaintiff's claim before trial—namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits." *Abbas*, 783 F.3d at 1333. The D.C. Circuit found the Federal Rules answers the question, and does so differently, in that "[t]hey do not require a plaintiff to show a likelihood of success on the merits." *Id.* at 1333–34. "Under the D.C. anti–SLAPP Act, the plaintiff is not able to get to trial just by meeting those Rules 12 and 56 standards." *Id.* at 1334. Instead, there is an additional hurdle. *Id.*

Under the Federal Rules, a well-pleaded complaint can survive motion to dismiss even if it is "improbable." *Id.* (quoting *Twombly*, 550 U.S. at 556). And because Rules 12 and 56 do not violate the Rules Enabling Act, the D.C. Circuit concluded that "[a] federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56

51

instead of the D.C. Anti–SLAPP Act's special motion to dismiss provision." *Id.* at 1337.

In addition to this persuasive authority from multiple Circuits, federal courts sitting in diversity in New York have consistently rejected the application of New York's anti-SLAPP law in a federal court sitting in diversity. Shortly after this Court's decision in *La Liberte*, the Southern District of New York decided *Nat'l Acad. of Television Arts and Sciences, Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408 (S.D.N.Y. 2021). There, the court discussed how under New York's anti-SLAPP law, "a defendant may recover 'damages, including costs and attorney's fees,' by bringing a special motion to dismiss pursuant to CPLR 3211(g)." *Nat'l Acad. of Television Arts and Sciences*, 551 F. Supp. 3d at 430.

And under § 3211(g), a motion to dismiss must be granted "unless the plaintiff demonstrates 'that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law.'" *Id.* at 430–31 (citing N.Y. Civ. Rts. L. § 70-a (citing CPLR 3211(g)). Applying *La Liberte*, the court found "that the 'substantial basis' standard articulated in New York's anti-

52

SLAPP law similarly conflicts with the standards under Federal Rules of Civil Procedure 12 and 56. *Id.* at 431. Indeed, contrary to the Federal Rules, the burden *shifts* to the plaintiff to demonstrate that his claims have a "substantial basis in law." *Id.* at 432 (quoting CPLR 3211(g)). Accordingly, the court found that, because Rules 12 and 56 answer the same question as New York's anti-SLAPP law, and these Federal Rules do not violate the Rules Enabling Act, "New York's anti-SLAPP law is inapplicable in federal court." *Id.*

This has been a controlling theme in New York federal courts. *See, e.g.*, *Kesner v. Buhl*, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022) ("granting relief under § 70-a would require the Court to apply a state procedural standard that conflicts with the Federal Rules of Civil Procedure."); *Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022) (same); *LoanStreet, Inc. v. Troia*, 21-cv-6166, 2023 WL 5836237, at *6 (S.D.N.Y. Sept. 8, 2023) (same); *Watson v. NY Doe 1*, No. 19-cv-533, 2023 WL 6540662, at *6 (S.D.N.Y. 2023) (same); *Prince v. Intercept*, 634 F. Supp. 3d 114, 141–142 (S.D.N.Y. 2022) (same); *Editor's Pick Luxury LLC v. Red Points Solutions SL*, No. 22-cv-7463, 2023 WL 6385993, at *6 (S.D.N.Y. Sept. 29, 2023) (same); *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 416–17

53

(S.D.N.Y. 2024); *Coritsidis v. Khal Bnei Torah of Mount Ivy*, No. 22-cv-10502, 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024). Even the District of Connecticut has found New York's anti-SLAPP law inapplicable in federal court. *See Friedman v. Bloomberg, L.P.*, No. 3:15-cv-443, 2022 WL 1004578, at *1 (D. Conn. Apr. 4, 2022) (denying defendants' motion to amend as futile because the "substantial basis" standard in New York's anti-SLAPP law conflicts with Rule 12 and 56).

In sum, a plain reading of the law dictates, under Section 70-a, a defendant may recover "damages, including costs and attorney's fees," by bringing a special motion to dismiss pursuant to CPLR § 3211(g). *See* N.Y. Civ. Rts. L. § 70-a(1). Such a motion "shall be granted" unless the plaintiff demonstrates "that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." CPLR § 3211(g). Courts have consistently supported this premise. In *Carroll*, Judge Kaplan seemingly found that § 70-a and § 3211(g) go hand-in-hand. *See Carroll*, 590 F. Supp. 3d at 585 ("One of my colleagues already has applied *La Liberte* to find a conflict between the Federal Rules 12 and 56, on the one hand, and amended Section 70-a of the New York anti-SLAPP law and, implicitly,

54

amended CPLR 3211(g) and 3212(h).”). And in *LoanStreet*, Judge Buchwald found, “the anti-SLAPP law reverses the burden and requires the plaintiff to prove a substantial basis in fact and law for the claim.” *LoanStreet*, 2023 WL 5836237, at *6 (internal citations omitted). *See also LaNasa*, 731 F. Supp. 3d at 416 (combining the requirements of § 70-a and § 3211(g) in analyzing New York’s anti-SLAPP). The district court erred in not recognizing this burden-shifting requirement, and its attendant procedural nature.

Instead, the district court found dismissal pursuant to N.Y. C.P.L.R. § 3211(g)(1) is just one option for dismissal under the anti-SLAPP law, and not the exclusive option. *See* JA at A-115 n.23. As illustrated above, the majority of courts have thus far disagreed. Even if the district court were correct, however, New York’s anti-SLAPP would still be inapplicable.

The *Kesner* court grappled with this exact argument. There, the defendant similarly argued dismissal pursuant to N.Y. C.P.L.R. § 3211(g)(1) is just one option. *Kesner*, 590 F. Supp. 3d at 701. The *Kesner* court, however, found that argument “unpersuasive.” *Id*. Still, the *Kesner* court found it did not matter either way because “the statute itself would

55

still embed a less plaintiff-friendly standard than Rule 12 (and Rule 56)." *Id.*

The pleading standard under the Federal Rules is "plausibility," while the pleading standard under the anti-SLAPP is "substantial basis." *Id.; see also Nat'l Acad. of Television Arts and Sciences*, 551 F. Supp. 3d at 432 ("New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure."); *Chinese Americans Civil Rights Coalition, Inc. v. Trump*, No. 21-cv-4548, 2022 WL 1443387, at *4 n.4 (S.D.N.Y. May 6, 2022) (finding that New York's anti-SLAPP law creates a "heightened pleading standard" that "does not apply in federal court."); *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 366 (S.D.N.Y. 2010) ("New York's legislature may have adopted the Anti-SLAPP law to elevate a plaintiff's burden at the pleading stage above 'plausibility' . . . to 'substantial basis,' but the United States Congress has thus far declined to follow suit.").

To get around this, the district court relied, in error, on *Reeves*, holding if a complaint fails to state a claim, then it lacks "substantial basis." JA at A-108 (citing *Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19 (1st Dept. 2024)). While the First Department determined

56

failure to state a claim implicitly means the claim lacks a "substantial basis," it came to this holding under a burden-shifting framework that does not apply in federal court. *See Reeves*, 218 N.Y.S.3d at 30–31. The *Reeves* court determined that, if a plaintiff cannot state a claim, then the plaintiff also cannot show his claims have a substantial basis. *See id.* at 31 ("Plaintiffs failed to show that their claims have a substantial basis; they cannot state a claim or raise an issue of triable fact."). The *plaintiff* must show plausibility *and* substantial basis in state court.

This, however, directly conflicts with the Federal Rules. Under the Federal Rules, a plaintiff is not required to show that his claim has a "substantial basis" in law. Instead, a plaintiff merely needs to show plausibility. *Twombly*, 550 U.S. at 570. Moreover, *Reeves* is helpful to Appellants' position in that it holds, "the 'substantial basis' standard applicable under CPLR 3211(g) *is more exacting than the liberal pleading standard* applicable to ordinary CPLR 3211(a)(7) motions." *Reeves*, 218 N.Y.S.3d at 30 (emphasis added). CPLR 3211(a)(7) is the New York state version of Federal Rule of Civil Procedure 12(b)(6). The same logic then is easily applied to the remaining case cited by the district court for this

proposition, in that each case would have necessarily relied on the same burden-shifting framework that is inapplicable. *See* JA at A-108–A-109.

One court has also found that New York's anti-SLAPP law violates Rule 11. *See Brady v. NYP Holdings, Inc.*, No. 21-cv-3482, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022). "Rule 11 is addressed to 'claims, defenses, and other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Id.* (quoting Fed. R. Civ. P. 11). Under the New York anti-SLAPP, however, this "is triggered on a showing that a covered action 'was commenced or continued without a substantial basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law.'" *Id.* (quoting N.Y. Civ. Rts. L. § 70-a(1)(a)) (emphases added). These standards are substantially similar and effectively the same. Each seeks to prevent frivolous or meritless actions. The main issue here is that a frivolous or meritless action is not the same standard as an action that ultimately is not "plausible". The district court erred by determining in conclusory fashion that a complaint that does not survive

58

12(b)(6) review necessarily is frivolous or meritless enough to warrant sanctions.

Further, New York's anti-SLAPP law does not afford plaintiffs "the opportunity to withdraw or correct the challenged paper without adverse consequences." *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1337.2 (4th ed. 2021)). Under the anti-SLAPP a movant "may seek sanctions without providing any advance notice to the adverse party." *Id.* Accordingly, the New York anti-SLAPP law conflicts with multiple federal rules, including Rule 11, which provides for obtaining sanctions against a party in federal court, and the district court erred by going against every other federal court to consider the issue and applying it in federal court. *See* JA at A-110 (quoting *Shady Grove*, 559 U.S. at 398).

Accordingly, as discussed above, Rules 8, 11, 12, and 56 answer the same question as New York's anti-SLAPP law. Indeed, "[t]hose Rules are 'sufficiently broad' . . . to 'control the issue' before the court, thereby leaving no room for the operation'" of the New York's anti-SLAPP law's procedure. C*arbone*, 910 F.3d at 1352 (quoting *Burlington*, 480 U.S. at 4–5). New York's anti-SLAPP law "'establishes the circumstances under

59

which a court must dismiss a plaintiff's claim before trial,' a question that is already answered (differently) by Federal Rules 12 and 56." *La Liberte*, 966 F.3d at 87 (quoting *Abbas*, 783 F.3d at 1333-34).

The pleading burden under Rule 12(b)(6), is simply "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). Here, New York's anti-SLAPP law, at least in this case, attempted to shift the burden on a motion to dismiss from the Appellee (defendant below) to the Appellants (plaintiffs below). On a motion to dismiss, a defendant bears the burden to demonstrate that a plaintiff's complaint does not state a plausible claim. *Twombly*, 550 U.S. at 570. In contrast, under New York's anti-SLAPP law, the plaintiff bears the burden to demonstrate that his claims have a substantial basis in law. *Nat'l Acad. of Television Arts and Sciences*, 551 F. Supp. 3d at 432. Such a burden shift in the state law is procedural and conflicts with the federal rules that dictate the standard for pre-trial dismissal. *See Klocke*, 936 F.3d at 244 (holding that burden-shifting conflicts with the Federal Rules).

And even if there is not burden shifting, the heightened pleading standard of substantial basis is alone enough to find that New York's

60

anti-SLAPP law does not apply in federal court. Indeed, "states may not superimpose additional requirements on the Federal Rules where the provisions 'answer the same question.'" *Id.* (interpreting *Shady Grove*). Accordingly, because the Federal Rules answer the same question, the New York anti-SLAPP conflicts with that answer, and there has been no challenge to whether these Federal Rules violate the Rules Enabling Act (nor could there be a challenge), this Court should reverse the district court's holding applying the New York anti-SLAPP in this case. The legal impact of New York's anti-SLAPP law is *procedural*, not substantive.

Moreover, the district court erred in finding that *Adelson* controls this matter. *See* JA at A-107. In *Adelson*, decided in 2014 (six years before *La Liberte*) this Court considered the applicability of Nevada's anti-SLAPP law in federal court. *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014). The *Adelson* court found Nevada's anti-SLAPP law applicable because it merely immunized speech that would otherwise be protected under common law defamation claims and instituted fee shifting, without conflicting with a Federal Rule of Civil Procedure. *La Liberte*, 966 F.3d at 86 n.3. In a relatively short opinion, the *Adelson* court quickly

determined that the fee shifting under the Nevada statute was substantive and therefore applicable.

In contrast, New York's anti-SLAPP law contains a provision shifting the burden from defendant to plaintiff, as well as a heightened pleading standard of "substantial basis" versus plausibility. *Nat'l Acad. of Television Arts and Sciences*, 551 F. Supp. 3d at 432. Thus, this case is more appropriately considered under the much more recent framework of *La Liberte* instead of *Adelson*.

The law itself requires an imposition of fees upon a demonstration "that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rts. L. § 70-a(1). Accordingly, fees are inextricably intertwined with the heightened pleading standard and the burden shifted to the plaintiff. In other words, a movant cannot be entitled to fees unless they also satisfy the procedural burden outlined in § 70-a. Therefore, if the procedural provisions of § 70-a do not apply, then neither can the fee-shifting provision. *See LaNasa*, 731 F. Supp. 3d at 417 ("the anti-SLAPP statute makes costs and fees available only when the court dismisses an action based on the statute's dismissal provision and does not purport to

62

make them available to parties who obtain a dismissal under Federal Rule of Civil Procedure 12(b)(6)"). From a practical standpoint, the *Abbas* decision is instructive:

> Had the D.C. Council simply wanted to permit courts to award attorney's fees to prevailing defendants in these kinds of defamation cases, it easily could have done so. But the D.C. Council instead enacted a new provision that answers the same question about the circumstances under which a court must grant pre-trial judgment to defendants.

*Abbas*, 783 F.3d at 1335. The same logic applies here. The district court's application in this case would create a world where any public figure (or limited purpose public figure) defamation plaintiff that loses a motion to dismiss under Rule 12(b)(6) would *automatically* be required to pay attorney's fees.

Finally, as to the applicability in federal court, the district court found that no separate motion is required to obtain fees under the statute, and the provisions of the attorneys' fee section is substantive. *See* JA at A-114–A-115. This is a flawed interpretation of the statute and caselaw.

As outlined above, the standards for a motion to dismiss and a motion for fees under the New York anti-SLAPP are different, in part due

63

to the burden shifting features of the anti-SLAPP statute. Therefore, bringing the fee issue within a motion to dismiss procedurally alters the motion to dismiss consideration and cannot be in compliance with Federal Rules of Civil Procedure 8 and 12. Appellee and the district court missed this critical issue when they sought to explain away the requirement several decisions have found requiring a separate motion.

In fact, the district court erroneously stated Ms. Tarlov brought a "motion for attorney's fees under New York's anti-SLAPP law." *Id.* at A-33. She did not. The notice of her motion was specifically titled: "Notice of Motion to Dismiss Complaint". *Id.* Her memorandum in support was likewise titled: "Memorandum in support of Defendant Jessica Tarlov's motion to dismiss for failure to state a claim". The only mention of the anti-SLAPP issue was contained within these documents, but it was not brought as a separate motion to be considered separately by the district court. Instead, Ms. Tarlov asked for attorney's fees in her motion to dismiss, which is squarely within and broadly under the control of Federal Rules of Civil Procedure 8 and 12.

Under New York's anti-SLAPP law, to obtain damages and fees, a party must "maintain an action, claim, cross claim or counterclaim." N.Y.

64

Civ. Rts. § 70-a. Thus, there is a plain requirement, on the face of the statute, to initiate a separate action or bring a counterclaim in order to seek fees. *See Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 333 (S.D.N.Y. 2021) ("it would seem that, per the terms of the New York law, the Defendant[s] must file a separate lawsuit in order to recover any attorneys' fees."); *Chinese Americans Civil Rights Coalition, Inc.*, 2022 WL 1443387, at *6 ("Because the defendant has not brought a separate action for fees or filed a "claim, cross claim or counterclaim" in this action, the request for attorney's fees is denied.").

The district court relied on a state trial court decision, and two state appellate decisions from 2022 and 2023, to find Appellee was not required to initiate a separate action or counterclaim. *See* JA at A-114–A-115. A subsequent appellate decision, however, denied a movant fees under the anti-SLAPP, in part, because the movant did "not assert[] a counterclaim for an award of attorneys' fees and costs." *VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 92 (2d Dept. 2024). Therefore, the district court erred when it accepted Ms. Tarlov's invitation to attempt to overrule multiple other decisions in this district without properly analyzing how the claim was brought.

65

Therefore, at a minimum, a separate motion must have been brought for fees in order for the attorney fees section of the New York anti-SLAPP to be found to be substantive and distinct from the burden-shifting provision that cannot be applied in conjunction with a motion to dismiss under Rule 12(b)(6). This alone requires reversal of the district court's decision, albeit potentially on the narrower ground that the combined motion was improper.

Based on the foregoing, it was inappropriate for the district court to "wade into *Erie's* murky waters." JA at A-110. Even if it were appropriate, however, the district court's reliance on forum shopping as a reason for applying New York's anti-SLAPP law is misplaced. The district court found that §70-a(1) furthers *Erie's* "twin aims". *Id.* (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). The "twin aims" of *Erie* focused on the discouragement of forum-shopping and avoidance of inequitable administration of the laws. *Id.*

This Court has already addressed the issue of forum shopping in *La Liberte*. There, *amici curiae* warned that a refusal to apply the California anti-SLAPP statute will "encourage forum shopping" and lead to "an increased burden on federal courts in this Circuit." *La Liberte*, 966 F.3d

66

at 88. This Court held, "[t]hat may be so; but our answer to a legal question does not turn on our workload; and in any event, the incentive to forum-shop created by a circuit split can be fixed, though not here." *Id.* Addressing a similar point, the majority in *Shady Grove* held, "[d]ivergence from state law, with the attendant consequence of forum shopping, is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure." *Shady Grove*, 559 U.S. at 416. "Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court . . . The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping." *Id.* Thus, the district court ultimately erred in considering forum shopping as a reason for imposing New York's anti-SLAPP law.

### b.  The district court's reliance on Justice Stevens's concurrence was misplaced.

The district court next found that, even if New York's anti-SLAPP law did overlap with the procedural requirements of Rule 12, the fees portion should apply because "Justice Stevens's concurrence maintains that 'there are some state procedural rules that federal courts must apply

in diversity cases because they function as part of the State's definition of substantive rights and remedies.'" JA at A-111 (quoting *Shady Grove*, 559 U.S. at 416-17 (Stevens, J., concurring in part and concurring in the judgment)). The district court relied on Justice Steven's concurrence because it was the position on the "narrowest grounds." *Id.* at A111-112 (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). Therefore, the district court found that New York's anti-SLAPP law should apply to as a matter of policy to further New York's objective to protect speech. *Id.* at A113.

Justice Scalia explicitly criticized the concurrence as an attempt to overrule *Sibbach*, which remains good law. *Shady Grove*, 559 U.S. at 411–14. If Courts "were to adopt the suggested criterion of the importance of the alleged right," it would "invite endless litigation and confusion worse confounded." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941). As Justice Scalia noted, Congress has not otherwise signaled a desire to depart from *Sibbach*, and courts should avoid providing Congress with a "moving target." *Shady Grove*, 559 U.S. at 414.

Regardless, the defendant in *Carbone* made a similar argument, relying on Justice Stevens's concurrence. *Carbone*, 910 F.3d at 1355. The

Eleventh Circuit declined to wade into Justice Stevens's concurrence, however, calling it a "nonstarter" because it had found the Georgia anti-SLAPP was procedural and did not create any substantive rights. *Id*. Indeed, the Georgia statute does not "does not purport to alter a defendant's rights to petition and freedom of speech under the Federal and Georgia Constitutions." *Carbone*, 910 F.3d at 1355. Instead, it provides a procedural mechanism to avoid liability, which conflicts with the Federal Rules. *Id*. The same rings true here.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request this Court reverse the district court's holding that Appellants failed to state a claim for defamation, defamation by implication, and injurious falsehood. To the extent his Court finds that Appellants have not stated a claim, Appellants ask that the Court reverse the district court's dismissal *with* prejudice, allowing Appellants an opportunity to amend their Complaint. Appellants further ask that this Court reverse the district court's holding that New York's anti-SLAPP law is applicable in a federal court sitting in diversity, and that it applies to this case.

69

Dated: February 25, 2025                    Respectfully submitted,

                                            /s/
                                            Jesse R. Binnall
                                            BINNALL LAW GROUP, PLLC
                                            717 King Street, Suite 200
                                            Alexandria, Virginia 22314
                                            Phone: (703) 888-1943
                                            Fax: (703) 888-1930
                                            Email: jesse@binnall.com

                                            *Attorney for Appellants Anthony
                                            Bobulinski and Stefan
                                            Passantino*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE  REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 13, 765 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Century.

/s/ Jesse R. Binnall
Jesse R. Binnall
jesse@binnall.com

*Attorney for Appellants*

Dated: New York, New York
        February 25, 2025

## CERTIFICATE OF SERVICE

I certify that on February 25, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall
jesse@binnall.com

*Attorney for Appellants*